United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WELLS,<br><br>          Plaintiff,<br><br>     v.<br><br>THE BOARD OF TRUSTEES OF THE<br>CALIFORNIA STATE UNIVERSITY, et al.,<br><br>          Defendants.<br>_____/ | No. C 05-02073 CW<br><br>ORDER GRANTING,<br>IN PART, and<br>DENYING, IN PART,<br>DEFENDANTS'<br>MOTION TO DISMISS<br>AND MOTION TO<br>STRIKE |

Defendants move to dismiss several of Plaintiff's causes of action and to strike Plaintiff's prayer for punitive damages. Plaintiff opposes the motion. The matter was heard on September 30, 2005. The Court having considered all of the papers filed by the parties and oral argument, Defendants' motion is GRANTED in part and DENIED in part.

                          BACKGROUND

     According to his complaint, Plaintiff David Wells was hired by

Humboldt State University in September, 1980 as a track coach on a one-year contract. Wells alleges that it was the custom and practice of the Athletic Department routinely to renew contracts so long as the coach was successful in inter-collegiate competition and demonstrated skills in management, fund-raising and interaction with the community, administration and alumni. Wells claims he far exceeded these standards and, consequently, his contract was renewed each year from 1981 through 2000.

In late 1998 and early 1999, Wells learned that women's sports were disproportionately funded relative to men's sports in violation of Title IX. At that time, Wells raised the issue with his supervisors and suggested they equally apportion the funding between men's and women's athletics. Despite his advocacy for Title IX compliance, Wells received a Faculty Merit Award in November, 2000 and his contract was renewed on January 25, 2001.

In March, 2001, because Wells raised the Title IX issue, California State University (CSU) appointed a faculty member to conduct an internal investigation and to report to administration at Humboldt State University. The investigation confirmed a violation of Title IX, yet the administration failed to respond.

On or about June 1, 2001, Wells and Humboldt State University students submitted a Title IX grievance with the Office of Civil Rights of the United States Department of Justice and sent a copy of the grievance to the President of Humboldt State University. Wells claims that, as a result, the athletic director at the time,

2

Swan[1], resigned on or about June 15, 2001.  Wells alleges that he discovered that Swan had illegally transferred funds within the Athletic Department to conceal his intent to deprive women's athletics of equal funding.  Furthermore, Wells alleges that Steven Butler, Vice President of Humboldt State University, conspired with Swan to make the transfer.  Wells declares that his own two-year investigation revealed that approximately $270,000.00 of Athletic Department funds was unaccounted for.

Wells filed another formal complaint with the Office of Civil Rights regarding Humboldt State University's failure to comply with Title IX.  Meanwhile, in December, 2001, Butler appointed Dan Collen interim athletic director.  Wells alleges that on June 5, 2002, Collen rated his performance generally as "unsatisfactory" on a "Coaching Performance Evaluation" in retaliation for raising the issue of the missing funds.

Wells states that, on or about April 15, 2003, his contract was renewed for only ten months instead of twelve months and the two-year budget for cross-country and men's and women's track was reduced by $104,000.00.  Wells alleges that these actions were taken because of his complaints regarding Title IX and the missing funds.  Wells alleges that, between 2002 and 2004, the administration repeatedly refused to account for the source and application of Athletic Department funds.  On March 5, 2004, Wells responded by filing a complaint concerning the missing funds with the State Auditor.  That same day, Wells filed a formal complaint

---

[1] Wells does not provide Swan's full name or name him as a defendant in this action.

3

1  with the California State University Whistleblower Office alleging
2  that Defendants retaliated against him for reporting the missing
3  funds and the Title IX non-compliance.
4      Wells was advised that on March 31, 2004, his contract would
5  not be renewed when it expired.  Wells alleges that, also as a
6  result of his complaints, the track and cross-country budgets for
7  the 2003-2004 academic year were reduced by forty percent.
8  Moreover, the remaining sixty percent of each budget was divided
9  into thirty percent for track and thirty percent for cross country.
10 Butler and Collen informed Wells that he could apply for one, but
11 not both, of the thirty-percent-funded positions.  Wells applied
12 for the positions but was not hired.  The candidate who was hired
13 was offered $50,000.00 in salary and benefits which was
14 inconsistent with the amount of Wells' contract.
15     On May 20, 2005, Wells filed this action against the Board of
16 Trustees of CSU; Rollin Richmond, President of Humboldt State
17 University; Steven Butler; and Dan Collen.  Wells sued the
18 individuals Defendants personally and in their official capacity as
19 employees of CSU.  Wells alleges eight causes of action: (1) and
20 (2) violation of 42 U.S.C. § 1983 against CSU and Richmond, Butler
21 and Collen individually and in their official capacities for
22 retaliation based on his exercise of free speech; (3) conspiracy
23 under 42 U.S.C. § 1985 against Richmond, Butler and Collen
24 individually and in their official capacities; (4) violation of 20
25 U.S.C. § 1681 against CSU for retaliation for reporting Title IX
26 non-compliance; (5) wrongful termination in violation of public

4

1 policy against CSU [2]; (6) violation of the prohibition against
2 discharge of whistleblowers under California Government Code §§
3 12653 and 8547.12 against CSU; (7) violation of public policy
4 against discharge of whistleblowers under California Labor Code §
5 1102.5 against CSU; and (8) intentional infliction of emotional
6 distress against Defendants Richmond, Butler and Collen.

7 Defendants move to dismiss the first, second, third and
8 fifth causes of action and move to strike Wells' prayer for
9 punitive damages.

LEGAL STANDARD

I. Dismissal Under Rule 12(b)(6)

A motion to dismiss for failure to state a claim will be denied unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Falkowski v. Imation Corp., 309 F.3d 1123, 1132 (9th Cir. 2002) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." Fed. R. Civ. P. 8(e). These rules "do not require a claimant to set out in detail the facts upon which he bases his

---

[2] Wells has voluntarily dismissed his fifth cause of action against Defendants Richmond, Bulter and Collen, as individuals.

5

claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).

II.  Motion to Strike Under Rule 12(f)

Rule 12(f) of the Federal Rules of Civil Procedure provides that a party may move to strike "any redundant, immaterial, impertinent or scandalous matter."  A Rule 12(f) motion may be used to strike a prayer for relief when the damages sought are not recoverable as a matter of law.  Tapley v. Lockwood Green Engineers, Inc., 502 F.2d 559, 560 (8th Cir. 1974) (prayer for damages exceeded maximum allowed by statute); Serpa v. SBC Telecomms., Inc., 2004 U.S. Dist. LEXIS 18307, *7 (N.D. Cal. 2004).

DISCUSSION

I.  First and Second Causes of Action Under 42 U.S.C. § 1983

Defendants assert that Plaintiff's first and second causes of action should be dismissed because Defendants are entitled to sovereign immunity under the Eleventh Amendment and because they are not "persons" for purposes of § 1983 actions.  Plaintiff contends that Congress abrogated Eleventh Amendment immunity for actions brought under Title IX.  Furthermore, Plaintiff argues that there is no Eleventh Amendment immunity for individuals sued in their individual capacity.

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced

6

>or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI

The Eleventh Amendment has been interpreted to shield States from suits by individuals absent the State's consent. Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996). Nevertheless, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and "acts pursuant to a valid grant of constitutional authority." Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001) (quoting Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73 (2000)).  However, the Court has held that Congress did not express an intent to abrogate State immunity with regards to 42 U.S.C. § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 66-67 (1989). States, State agencies, and State officials sued in their official capacity are not considered "persons" within the meaning of § 1983. Id. at 71; Cortez v. County of Los Angeles, 294 F.3d 1186, 1188 (9th Cir. 2002).

Defendant CSU is an instrumentality of the State of California. Jackson v. Hayakawa, 682 F.2d 1344, 1349-50 (9th Cir. 1982). Thus, CSU and its officers acting in their official capacity are entitled to Eleventh Amendment immunity from § 1983 actions. On this point, Wells' argument that the State does not have immunity for actions brought under Title IX is non-responsive.

7

The Eleventh Amendment does permit suits for prospective injunctive relief against State officials in their official capacities. Frew v. Hawkins, 540 U.S. 431, 437 (2004) (citing Ex Parte Young, 209 U.S. 123 (1908)). In such a case, a federal court may order prospective relief and measures ancillary to prospective relief but may not award money damages or its equivalent. Edelman v. Jordan, 415 U.S. 651, 668 (1974); Green v. Mansour, 474 U.S. 64, 71-73 (1985). Wells sues Defendants CSU and Richmond, Butler and Collen in their official capacity seeking monetary relief and punitive damages but he does not request prospective injunctive relief. At the hearing, Plaintiff's attorney stated that he did not wish to amend to sue Defendants for injunctive relief. Therefore, the first and second causes of action are dismissed against Defendants CSU and Richmond, Butler and Collen acting in their official capacities.

Wells also sues Defendants Richmond, Butler and Collen as individuals. The Ninth Circuit has held that the Eleventh Amendment does not prohibit individual capacity suits. Blaylock v. Schwinden, 862 F.2d 1352, 1354 (9th Cir. 1988). Thus, "under § 1983, a plaintiff may sue a state official in his individual capacity for alleged wrongs committed by the officer in his official capacity." Price v. Akaka, 915 F.2d 469, 473 (9th Cir. 1990) (citing Blaylock, 862 F.2d at 1354). Therefore, Wells may proceed with his first and second causes of action for damages

8

against Defendants Richmond, Butler and Collen in their individual capacities.

## II. Third Cause of Action for Conspiracy Under § 1985(3)

Defendants Richmond, Butler, and Collen contend that Plaintiff's third cause of action should be dismissed because of sovereign immunity under the Eleventh Amendment.

The Ninth Circuit has held that a State entity possesses Eleventh Amendment immunity from individual suits arising under § 1985. Austin v. State Indus. Ins. Sys., 939 F.2d 676 (9th Cir. 1991); Mitchell v. Los Angeles Cmty College Dist., 861 F.2d 198, 201 (9th Cir. 1988). Thus, Defendants Richmond, Butler and Collen, acting in their official capacities as State officers, are immune from Wells' third cause of action. Because Wells seeks money damages, he may only proceed against Defendants as individuals. Austin, 939 F.2d at 679 (citing Kentucky v. Graham, 437 U.S. 159, 166-67 (1985)). Therefore, the third cause of action against Defendants Richmond, Bulter and Collen acting in their official capacities is dismissed.

Defendants also contend that Wells has failed to plead his conspiracy claim with sufficient specificity. Under § 1985, "[a] mere allegation of conspiracy without factual specificity is insufficient." Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988). The elements of a § 1985(3) claim are (1) the existence of a conspiracy to deprive the plaintiff of the

9

equal protection of the laws; (2) an act in furtherance of the conspiracy; and (3) a resulting injury. Scott v. Ross, 140 F.3d 1275, 1284 (9th Cir. 1998). In addition, an indispensable element of the conspiracy claim is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).

Wells points to paragraph thirty-seven of his complaint in which he alleges several acts undertaken by Defendants in retaliation for his exercise of free speech. However, Wells fails to allege that Defendants agreed among themselves to deprive him of the equal protection of the laws. Furthermore, Wells does not allege that the actions taken against him were motivated by any racial or class-based discriminatory animus. Rather, Wells asserts throughout his complaint that Defendants retaliated against him because of his advocacy on behalf of the students. Yet, Wells cites no authority which recognizes as a protected class the victims of retaliation for advocacy on behalf of others. Accordingly, Wells' third cause of action against Defendants as individuals is not sufficiently plead and is dismissed.

However, the Court grants Wells leave to amend to allege that (i) Defendants agreed to deprive him of equal protection, and (ii) he is a member of a protected class and Defendants' actions were motivated by discriminatory animus against him because of his

10

membership in that class. In considering such an amendment, Wells should take notice that courts have held consistently that whistleblower status does not support a § 1985 claim. See Childree v. UAP/GA AG Chem, Inc., 92 F.3d 1140, 1146-47 (11th Cir. 1996); Hicks v. Resolution Trust Corp., 970 F.2d 378, 382 (7th Cir. 1992); Deretich v. Office of Admin. Hearings, 798 F.2d 1147, 1153 (8th Cir. 1986); Buschi v. Kirven, 775 F.2d 1240, 1258 (4th Cir. 1985); McEvoy v. Spencer, 49 F. Supp.2d 224, 227 (S.D.N.Y. 1999).

IV. Fifth Cause of Action for Wrongful Termination

Defendants assert that Plaintiff's fifth cause of action should be dismissed because Plaintiff was not terminated and because there is no individual liability for wrongful termination. Wells agrees that the fifth cause of action against Defendants Richmond, Butler and Collen should be dismissed. Pl's Opp. Memo at 1, n. 2. Nevertheless, he maintains that California State University is liable for his termination.

Under California law, the termination of an employee is tortious when it violates a fundamental public policy. Tameny v. Atlantic Richfield Co., 27 Cal. 3d 167, 176 (1980). Such a claim has become known as a Tameny claim. A plaintiff must show that the public policy is delineated in a constitutional or statutory provision, or in administrative regulations that serve a statutory objective. Green v. Ralee Engineering Co., 19 Cal. 4th 66, 79-80 (1998).

11

Wells alleges that he was terminated for exercising his free speech rights and for reporting Defendants' non-compliance with Title IX. As alleged, Wells' termination would contravene public policies. See U.S. Const. amend. I; 20 U.S.C. 1681, et. seq. (Title IX); Jackson v Birmingham Bd. of Educ., 125 S. Ct. 1497, 1504-05 (2005)(retaliation for asserting Title IX rights on behalf of victims of discrimination); Cal. Gov. Code §§ 12653 and 8547.12. However, Wells had a one-year employment contract with CSU, which was renewed each year from 1981 until 2004. In California, an employee whose fixed-term contract is not renewed cannot state a claim for wrongful termination in violation of public policy. Motevalli v. Los Angeles Unified Sch. Dist., 122 Cal. App. 4th 97, 112-13 (2004).

In Motevalli, the plaintiff, a probationary teacher, also held a one-year employment contract. When her contract was not renewed, she sued, claiming she was terminated for asserting her free speech rights by refusing to cooperate with the school's random weapons searches. Id. at 104-05. The California appellate court held that, for purposes of stating a Tameny claim, this did not constitute termination. Id. at 113. The court held that an employer could not be held liable in tort for not renewing an employment contract which expired on its own terms. Id. at 113 (citing Daly v. Exxon Corp., 55 Cal. App. 4th 39, 45-46 (1997)).

Wells argues that his case can be distinguished from Motevalli

12

because that case involved a probationary teacher with an emergency credential working under a written contract. But these facts are immaterial; the court did not limit its holding to probationary teachers with emergency credentials. Rather, it spoke generally about the liability of employers. Moreover, in terms of the validity of Wells's fifth cause of action, the facts and claims asserted in Motevalli closely mirror those in the instant complaint. Like the plaintiff in Motevalli, Wells had a one-year contract, which he alleges was not renewed because he asserted his free speech rights.

Wells also contends that Daly suggests that an employer may be liable if the claimant could prove that "but for" her complaints, the employer would have renewed the employment contract. Daly, 55 Cal. App. 4th at 44. But Daly does not support Wells' contention because the court was addressing a cause of action under section 6310(b) of the California Occupational Safety and Health Act. Daly did not state that the plaintiff could amend her complaint in order to allege a Tameny claim. In fact, it specifically ruled out this possibility. Id. at 46.

Wells states that Defendants engaged in a two-year course of conduct that led to his constructive termination. He explains that this conduct included a negative evaluation, a reduction in his budget and a rejection of his application for the "fractional" coaching position. Under California law, the test for constructive

13

discharge is whether conditions were so "intolerable or aggravated" that a reasonable employee would have resigned, and whether the employer knew about the conditions and their effect on the employee and could have remedied them but did not.  See Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238 (1994) (citation omitted).  Here, Wells does not allege that conditions were so intolerable that he was forced to resign.  Rather, Wells admits that his employment ended when his one-year contract was not renewed.  Therefore, Wells was not constructively discharged.

Referring to Foley v. Interactive Data Corp., 47 Cal. 3rd 654 (1988), Wells argues that the continual renewal of his contract from 1980 to 2004 gave rise to a covenant of good faith and fair dealing.  Even if Wells' assertion were correct, however, this fact alone would not create a Tameny claim.  Indeed, in Foley the court held that tort remedies are not available for breach of an implied covenant of good faith and fair dealing.  Foley, 47 Cal. 3rd at 700.

Wells believes that Defendants argue against liability because there was no express contract.  This characterization is incorrect. Defendants move to dismiss for failure to state a claim on the ground that Wells was employed under a contract which ended by its own terms and, thus, Defendants did not cause Wells' termination. Wells also contends that a Tameny claim may arise in an at-will employment relationship, citing Gantt v. Sentry Insurance, 1 Cal. 4th 1083, 1090 (1992), overruled on other grounds, Green v. Ralee

14

Engineering Co., 19 Cal. 4th 66 (1998). However, Wells acknowledges that his employment was governed by a one-year contract. Compl. ¶ 28. He was not an at-will employee. This is the relevant fact that bars Wells' Tameny claim against CSU. Therefore, the fifth cause of action is dismissed.

V. Punitive Damages

Defendants move to strike Wells' request for punitive damages on the ground that there can be no recovery against a State entity or State officials sued in their official capacities. Wells argues that a State agency can indemnify its employees for punitive damages in its discretion and such damages are recoverable against individual defendants.

Punitive damages are not available in suits under § 1983 against government entities. Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 785 (2000) (citing Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981)). State officials acting in their official capacities are also immune from punitive damages. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Mitchell v. Dupnik, 75 F.3d 517, 527 (9th Cir. 1996). However, punitive damages are available in an individual capacity suit against a State official. Smith v. Wade, 461 U.S. 30, 35 (1983).

Therefore, Wells' request for punitive damages against Defendants CSU, and against Richmond, Bulter and Collen acting in their official capacities, is stricken. The Court, however, denies

15

Defendants' motion to strike Wells' request for punitive damages against Defendants Richmond, Butler and Collen as individuals.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1) Defendants' motion to dismiss is GRANTED with prejudice as to all claims in the first and second causes of action against Defendants CSU and Richmond, Butler and Collen acting in their official capacities.

2) Defendants' motion to dismiss is DENIED as to all claims in the first and second causes of action against Defendants Richmond, Butler and Collen acting in their individual capacities.

3) Defendants' motion to dismiss is GRANTED as to all claims in the third cause of action against Defendants Richmond, Butler and Collen acting in their official capacities.

4) Defendants' motion to dismiss is GRANTED, with leave to amend, as to Plaintiff's third cause of action against Defendants Richmond, Butler and Collen as individuals.  The Court grants Plaintiff leave to amend as instructed.  If Plaintiff decides to amend, he will have twenty days from the date of this order to file his amended complaint.

5) Defendants' motion to dismiss is GRANTED with prejudice as to all claims in the fifth cause of action.

6) Defendants' motion to strike is GRANTED, without leave to amend, as to paragraphs 40 and 46 and prayer (d) for relief against

16

Defendants CSU and Richmond, Butler and Collen acting in their official capacities.

   7) Defendants' motion to strike is DENIED as to paragraphs 40 and 46 and prayer (d) for relief against Defendants Richmond, Butler and Collen as individuals.

   IT IS SO ORDERED.

Dated: 10/4/04



CLAUDIA WILKEN
United States District Judge

17