**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAVID WELLS,

       Plaintiff,

  v.

BOARD OF TRUSTEES OF THE CALIFORNIA
STATE UNIVERSITY, et al.,

       Defendants.

_____/

No. C 05-02073 CW

ORDER GRANTING
DEFENDANTS'
MOTION FOR
SUMMARY JUDGMENT
IN PART AND
DENYING IT IN
PART

Defendants Board of Trustees of the California State University, Rollin Richmond, Steven Butler and Dan Collen move pursuant to Federal Rule of Civil Procedure 56 for summary judgment, or in the alternative for partial summary adjudication of the claims against them. Plaintiff David Wells opposes this motion. The matter was submitted on the papers. Having considered the parties' papers and the evidence cited therein, the Court grants Defendants' motion in part and denies it in part.

United States District Court

For the Northern District of California

BACKGROUND[1]

Plaintiff began a coaching career at Humbolt State University (HSU) in 1980; that career ended in 2004. While employed at HSU, Plaintiff coached a combination of men's and women's cross-country and track and field events. His employment was governed by limited-term contracts; usually, the contract was for a one-year term, but sometimes the term was two or three years. For over two decades, after each term expired, Plaintiff's contract would be renewed for another set term.

In late 1998 or early 1999, Plaintiff became concerned about HSU's compliance with Title IX. He approached Mike Swan, who was then the athletics director, and discussed his concerns, specifically, the inequality between the funding of men's and women's sports. Mr. Swan was non-responsive. Plaintiff then met with John Costello, who was the Dean of the College of Professional Studies, to discuss his Title IX concerns. Dean Costello referred Plaintiff back to Mr. Swan. But Plaintiff's concerns were not addressed.

Plaintiff then contacted the Office of Civil Rights. He learned that, as a coach, he could not file a complaint regarding possible violations of Title IX; only students could file complaints. Plaintiff then started working with female student

---

[1] Both parties submitted numerous objections to the other parties' evidence. To the extent that the Court relied upon evidence to which there is an objection, the parties' objections are overruled. To the extent that the Court did not rely on such evidence, the parties' objections are overruled as moot. The Court, however, notes that Defendants introducing new evidence in connection with their reply is improper. Contratto v. Ethicon, Inc., 227 F.R.D. 304, 309 (N.D. Cal. 2005).

athletes to address HSU's non-compliance with Title IX.  A group of coaches and female student athletes met weekly off-campus.  One former female student athlete states that Plaintiff was "present at most every meeting, providing guidance on procedures, tactics and strategy to be employed in raising Title IX concerns in an appropriate manner."  Bossen Dec., ¶ 7.  Eventually, three student athletes filed an online complaint with the Office of Civil Rights.  Following the filing of the complaint, and without a finding by the Office of Civil Rights of a violation or an admission by HSU of any wrongdoing, HSU agreed to implement a Voluntary Resolution Plan to resolve the Title IX issues raised in the complaint.

Meanwhile, Plaintiff, along with six other coaches, sent a letter to the Vice President of Academic Affairs.  Plaintiff states that he wrote this letter.  The letter objected to a proposed "tier system."  Under the tier system, sports would be ranked and certain teams would be left without appropriate resources.  The letter linked the tier system to Title IX compliance: "We need to support Title IX on our campus.  It is right and just to lift male and female athletes equally.  It is in our best interest to follow federal law."  Tsao Supp. Dec., Ex. 17.

In August, 2001, Diane Milunitovich was commissioned to prepare a gender equity report for HSU.  She concluded that HSU had made a number of decisions that adversely impacted female student athletes: "While these decisions do not appear to be intentional, the combined impact could be viewed, at best, as a lack of understanding of Title IX; or at worse, a pattern and practice of discrimination."  Cohune Dec., Ex. G, CSUH 1002.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

Following the gender equity report, a Coaches' Report to the Academic Senate was prepared. Although the report does not state who prepared it, Plaintiff states that he did. The report stated that the critical issues facing the athletics department were finances and equity for female student athletes, noting that HSU was not in compliance with Title IX.

Around January, 2002, the athletics department, which had previously been housed under the Academic Affairs Department, was transferred to Student Affairs. Defendant Butler was the vice-president of Student Affairs. At approximately the same time, Defendant Collen became the athletics director.[2] As the new athletics director, Defendant Collen states that he began to notice Plaintiff's various performance deficiencies: Plaintiff failed to raise funds for his programs; he failed timely to update administrative staff regarding his teams' performance; he failed to recruit student athletes; and he failed to interact with colleagues and staff in a professional and non-threatening manner. The evaluation Defendant Collen prepared for Plaintiff for the period from January, 2002 to June, 2002 several times noted, "Does not meet expectations." Plaintiff's evaluation for the period from January, 2002 to December, 2002 did not include any such comments. But the evaluation Defendant Collen prepared for Plaintiff for

---

[2]Defendant Richmond, the third individual Defendant, became president of HSU in July, 2001 or 2002. In his declaration, Defendant Richmond states that he has been the president of HSU since July, 2001. But Plaintiff cites to Defendant Richmond's deposition, providing that he became president in July, 2002; in their papers, Defendants also refer to July, 2002 as the relevant date.

4

United States District Court

For the Northern District of California

January, 2003 to December, 2003 again several times noted, "Does not meet expectations."

In 2002, HSU, like other State universities and colleges, suffered a reduction in State funding. The athletics department was required to make a three to four percent budget reduction mid-year for the 2002-2003 academic year. The athletics department had to cut its budget by ten percent for the 2003-2004 academic year, followed by another ten percent budget reduction for the 2004-2005 academic year. In response, the athletics department implemented, over a period of time, the following: (1) across-the-board reduction in administrative support for all sports; (2) reduction in one group of faculty coaching contracts from twelve months to ten months, with an opportunity for coaches to request a twelve-month contract if they could submit proposals showing that they could generate revenue in the summer months that exceeded their salaries;[3] (3) reductions and eliminations of assistant coaching positions; (4) reductions in the travel budget; (5) elimination of the men's soccer head coach position by combining it with the women's soccer head coach position; (6) elimination of sprints and field events from the track and field program; (7) reduction of the cross-country head position from 0.5 to 0.3 time; (8) reduction of the track and field head coach position from 0.5 to 0.3 time; (9) reduction of the women's crew head coach position from 1.0 to 0.6 time; and (10) maintenance of the previously reduced women's

_____

[3]Plaintiff asserts that all coaches' contracts were restored from ten months to twelve months, except for his and that of the women's crew coach. According to Plaintiff, this was another example of Defendants targeting Plaintiff.

5

United States District Court

For the Northern District of California

softball head coach position as a 0.5 time position.  These budget
cuts were the subject of debate at coaches' meetings and at
Intercollegiate Athletics Advisory Committee meetings.  Plaintiff
asserts that these cost-cutting measures were aimed at track,
cross-country and crew, the sports headed by coaches who complained
about Title IX non-compliance and missing funds.[4]

Plaintiff states that, through his investigation of Title IX
non-compliance, he learned that the accounting of $1,500 raised by
a student athlete was improper.  He then discovered that a cash
donation to track and field was not accounted for; Plaintiff claims
that he found almost $300,000 in untraceable, or missing, funds.
He approached the administration with his concerns regarding
missing funds and fiscal mismanagement.  After realizing that the
administration would not investigate, he filed a formal
whistleblower complaint with the CSU Whistleblower Office and
another complaint with the State Auditor.  On March 16, 2004,
Plaintiff sent a letter to Defendant Butler, notifying him that he
had asked two different agencies to investigate fiscal
mismanagement, misrepresentation of financial issues, and threats
and retaliation towards those who questioned the fiscal activities
of the athletics department; Plaintiff sent a carbon copy of the
letter to Defendant Collen.

Coaches' contracts are renewed by April 1 of each year; the
athletics department did not renew Plaintiff's contract that year.

_____

[4]The facts supporting this allegation are largely missing;
instead, this section of Plaintiff's opposition contains "(cite)"
in the place where a citation to the record belongs.

United States District Court

For the Northern District of California

Instead, it announced that the track and field and cross-country positions would be reduced to a 0.6 total time base; previously, each position had a 0.5 time base, for a combined 1.0 time base. The athletics department conducted a national search for the newly structured track and field and cross-country head coach position. It informed Plaintiff of this search and encouraged him to apply. He did.  The search committee, however, recommended hiring another candidate.  The rationale for not recommending Plaintiff was as follows:

> Lack of recent participation in recruiting activities; lack of recent ability to work cooperatively and responsibly with Athletics department administrative and support staff; lack of recent participation in department wide fund-raising events, such as the Auction and scholarship fund-raising through Lumberjack Athletic Club.

Collen Dec., Ex. K.

None of the Defendants was on the search committee.  Based on the search committee's recommendation, a new track and field and cross-country head coach was hired.  And Plaintiff's employment expired by the terms of his contract on May 31, 2004.

Investigations were conducted into Plaintiff's whistleblower complaints.  Dr. Peter Kenyon, a HSU professor of accounting, concluded that, while the athletic department's financial management practices needed to improve, he "found no evidence that fiscal management practices by the administrators named in Wells' complaint amount to corruption, malfeasance, bribery, theft, fraud or other violations of state or federal laws or regulation." Richmond Dec., Ex. M.  As to Plaintiff's contract not being renewed, Dr. Kenyon concluded that he "was not able to resolve the

7

United States District Court

For the Northern District of California

question of whether the decision to not renew Wells' contract is justified by poor job performance or is a way to punish him for failing to submit quietly to administrative decisions." Id. After issuing his report, Dr. Kenyon clarified that conclusion: "I did not investigate the basis for the administrative decision to not renew Wells' contract and I do not offer a finding on the propriety of that decision in this report; I leave that for others." Id.

A supervising deputy attorney general at the California Department of Justice conducted an investigation into the decision not to renew Plaintiff's contract. That investigation concluded that Plaintiff's "allegation that Mr. Collen, Dr. Butler and Dr. Richmond retaliated against him in violation of the Whistleblower Protection Act is not substantiated by the evidence." Richmond Dec., Ex. N.

In addition, Defendant Richmond assembled a committee, consisting of a student, a staff member and a dean, to look into allegations of fiscal mismanagement by the athletic department. Although these investigations concluded that there was no malfeasance in the athletics department, Defendant Richmond later stripped the athletic department of control over its own financial affairs.

In May, 2005, Plaintiff filed this action, alleging eight causes of action against Defendants. The Court dismissed the third cause of action for conspiracy and the fifth cause of action for wrongful termination in violation of public policy. In addition, the Court dismissed the first and second causes of action against Defendant CSU for violations of 42 U.S.C. § 1983 and dismissed the

8

request for punitive damages against it.   Defendants now move for summary judgment on Plaintiff's remaining claims.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.   Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.   Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.   Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.   The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.   The substantive law will identify which facts are material.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods.   Nissan Fire & Marine Ins.

United States District Court
For the Northern District of California

<u>Co., Ltd., v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1106 (9th Cir. 2000).

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

<u>Id.</u>

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  <u>Id.</u>; <u>see also</u> <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 885 (1990); <u>Bhan v. NME Hosps., Inc.</u>, 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  <u>Bhan</u>, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation.  <u>Nissan</u>, 210 F.3d at 1105.  If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists.  <u>Id.</u>

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no

10

United States District Court

For the Northern District of California

obligation to offer any evidence in support of its opposition.  Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial.  Id. at 1107.

DISCUSSION

Defendants argue that the Court should grant summary judgment in their favor on all of Plaintiff's remaining claims: (1) his claims, under 42 U.S.C. § 1983, against the individual Defendants for violation of his First Amendment right to free speech; (2) his claim against Defendant CSU for retaliation for reporting Title IX non-compliance; (3) his State claims against Defendant CSU for violating the prohibition against the discharge of whistleblowers; and (4) his State claim against the individual Defendants for intentional infliction of emotional distress.  In addition, Defendants contend that the Court should dismiss Plaintiff's request for punitive damages against the individual Defendants.

I.   Freedom of Speech Claims

A claim may be stated under section 1983 where a plaintiff alleges retaliation by State actors for the exercise of protected First Amendment rights.  Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977).  In order to sustain a claim for such retaliation, Plaintiff must show (1) that he engaged in protected speech on a matter of public concern, (2) that Defendants took an adverse employment action against him, and (3) that his speech was a substantial or motivating factor in the adverse action.  Burch v. Regents of the University of California, 433 F. Supp. 2d 1110, 1130 (E.D. Cal. 2006).

11

United States District Court

For the Northern District of California

1    Because Plaintiff was a public employee, his speech is

2   protected only if it relates to a matter of public concern.

3   Connick v. Myers, 461 U.S. 138, 146 (1983).[5]  Matters of public

4   concern include issues of "political, social, or other concern to

5   the community."  Id.  It is undisputed that Defendants took adverse

6   employment action against Plaintiff.

7    Plaintiff can show that his speech was a substantial

8   motivating factor in the adverse employment action by introducing

9   evidence regarding the proximity in time between his speech and the

10   allegedly retaliatory action.  Coszalter v. City of Salem, 320 F.3d

11   968, 977 (9th Cir. 2003).  "Depending on the circumstances, three

12   to eight months is easily within a time range that can support an

13   inference of retaliation."  Id.  In addition, Plaintiff can create

14   a genuine issue of material fact on this point by producing

15   evidence that Defendants expressed opposition to his speech, either

16   to Plaintiff or to others.  Schwartzman v. Valenzuela, 846 F.2d

17   1209, 1212 (9th Cir. 1988).  In either case, Plaintiff must provide

18   evidence that Defendants knew of his protected speech.  Keyser v.

19   Sacramento Unified Sch. Dist., 265 F.3d 741, 751 (9th Cir. 2001).

20   If Plaintiff makes a prima facie showing, the burden shifts to

21   Defendants to demonstrate either that (1) their legitimate

22   administrative interests outweigh Plaintiff's First Amendment

23

24    [5]The Supreme Court recently addressed the First Amendment
    rights of public employees.  Garcetti v. Ceballos, 126 S.Ct. 1951
25   (2006).  Although Defendants raise Garcetti in their moving papers,
    they abandon their argument under Garcetti in their reply.
26

27

28                                  12

**United States District Court**
For the Northern District of California

rights or (2) that they would have reached the same decision even in the absence of Plaintiff's protected conduct. <u>Burch</u>, 433 F. Supp. 2d at 1130.

    A.   Speech Concerning Title IX

    Plaintiff's first claim is that Defendants retaliated against him for reporting that HSU was violating Title IX and for organizing others to do the same.  But, as Defendants point out, Plaintiff provides no evidence that the individual Defendants were aware of his Title IX speech or his involvement with the student group that filed the complaint with the Office of Civil Rights. Nor does Plaintiff dispute that none of the individual Defendants had responsibility for the athletics department when he made his Title IX complaints to Mr. Swan and Dean Costello.  In his argument section, Plaintiff does not state that Defendant Butler was aware of his complaints regarding HSU's non-compliance with Title IX. Plaintiff states only that Defendants Richmond and Collen were aware of his complaints.  The pages he cites from Defendants Richmond's and Collen's depositions, however, do not support that statement.  Defendant Richmond's cited deposition testimony concerns his response to an April, 2004 email from a professor regarding cuts in the track and rowing programs and rumors regarding corruption and dishonesty in the athletics department. There is no mention of Plaintiff's Title IX complaints, which Plaintiff admits he voiced only from 1999 to early 2002.  Plaintiff does not include the pages of Defendant Colleen's deposition that he cites.

    Plaintiff asserts in his statement of facts that his

13

United States District Court

For the Northern District of California

involvement in Title IX compliance issues was visible and obvious. But, again, he provides no evidence to support that assertion. He states that he was prominently mentioned at the press conference called to announce the filing of the female student athletes' complaint to the Office of Civil Rights. However, the declaration that he cites to support that statement only provides, "The filing was announced at a press conference, attended by Coach Wells, members of the public and officials from HSU. The local press carried the story." Bossen Dec., ¶ 9. Plaintiff's declaration only states that the press conference was well attended and that "I was supported [sic] their efforts at the press conference." Wells Dec., ¶ 30. Plaintiff states that Alan Exley was told that associating with Plaintiff would damage his career. The pages Plaintiff cites from Mr. Exley's deposition, however, describe the reporting structure and personnel at HSU; there is no mention of the consequences of associating with Plaintiff. Danielle Saylor Bossen's statement that it is "difficult to believe" that Mr. Collen, Dr. Butler or then-president Alistair McCrone were unaware of Plaintiff's participation in the student athletes' Title IX efforts also fails to support Plaintiff's assertion that Defendants knew of his Title IX speech. Karam v. City of Burbank, 352 F.3d 1188, 1194 (9th Cir. 2003) (speculation does not rise to the level of evidence sufficient to survive summary judgment).

Just as Plaintiff fails to provide evidence to show that the individual Defendants knew of his Title IX complaints, he does not dispute the individual Defendants' contention that they did not. All three individual Defendants submitted declarations with their

14

**United States District Court**

For the Northern District of California

motion for summary judgment, stating that Plaintiff never complained to them personally about Title IX or gender equity issues and that they were not aware that Plaintiff was a Title IX proponent until this lawsuit began.   Collen Dec., ¶ 15; Butler Dec., ¶ 15; Richmond Dec., ¶ 7.

Furthermore, as noted above, Plaintiff acknowledges that he raised his Title IX concerns from 1999 to early 2002.   Therefore, any adverse action in 2004 is too attenuated.   He did not bring this suit until May 20, 2005.   Thus, even assuming that there was evidence to show that Defendants were aware of Plaintiff's Title IX speech, any adverse action that occurred before May 20, 2003 is not actionable.   RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1061 (9th Cir. 2002) (rejecting the continuing violation theory and holding that appellants cannot establish liability for events occurring prior to the limitations period, even when they are related to acts alleged in timely filed charges).   And any adverse action occurring after May 20, 2003, would not support an inference of retaliation based on Plaintiff's Title IX speech.

Therefore, the Court grants summary judgment in favor of the individual Defendants on Plaintiff's first section 1983 cause of action based on retaliation for his Title IX speech.

B.   Speech Concerning Fiscal Mismanagement

Plaintiff's second section 1983 claim is that the individual Defendants retaliated against him for reporting missing funds and for complaining about the athletic department's fiscal mismanagement.   As Plaintiff notes, misuse of public funds, wastefulness, and inefficiency in managing and operating government

United States District Court

For the Northern District of California

entities, such as HSU's athletic department, are matters of public concern.  Johnson v. Multnomah County, 48 F.3d 420, 425 (9th Cir. 1995).  And, unlike his Title IX speech, Plaintiff provides evidence that Defendants were aware of his whistleblower complaint and speech relating to fiscal mismanagement.  He complained about the missing funds, and in March, 2004, sent a letter to Defendants informing them that he filed a whistleblower complaint.  At the end of that same month, Plaintiff was informed that his contract would not be renewed and that he would need to reapply for the restructured head coach position.  He did, but Defendants awarded the head coach position to another candidate.  The proximity between Plaintiff's complaint and the adverse employment actions supports an inference that Plaintiff's speech was a substantial motivating factor in the adverse actions.  Defendants' argument that there is no nexus between Plaintiff's complaints of fiscal mismanagement and any adverse employment action is unconvincing. The temporal proximity, along with the protected speech and adverse employment actions, is sufficient for Plaintiff to show a prima facie case of retaliation in violation of the First Amendment.

Defendants argue that, even if Plaintiff makes a prima facie showing, their interest in effectively managing personnel issues outweighs Plaintiff's First Amendment rights.  The Supreme Court in Pickering v. Board of Education, 391 U.S. 563 (1968), established a balancing test to determine whether a government employee's interest in speaking outweighs the government employer's interest in promoting efficiency and preventing disruption.  Following Pickering, courts have considered various factors when balancing

**United States District Court**
For the Northern District of California

these interests.

One factor is whether Defendants can "demonstrate actual, material and substantial disruption." Roth v. Veteran's Administration, 856 F.2d 1401, 1407 (9th Cir. 1988); see also Johnson, 48 F. 3d at 427 (noting that, in a case where the plaintiff alleged unlawful activities, the defendant had to "show actual injury to its legitimate interest, not mere disruption") (emphasis in original).  Defendants contend that they have made a showing of both disruption and actual injury.  They state that they have shown that they have a legitimate interest in providing a safe workplace for their employees free from Plaintiff's threats, intimidation and aggression.  The speech Defendants point to, as causing disruption and actual injury, is the threats Plaintiff allegedly made to his co-workers.  The alleged threats, however, are not the speech at issue; rather, Plaintiff's protected speech regarding Defendants' alleged fiscal mismanagement is at issue. While Plaintiff's alleged threats are relevant to whether Defendants would have made the same adverse decisions regardless of Plaintiff's protected speech, they are not relevant to the Pickering balancing test.  Defendants have not demonstrated that Plaintiff's complaints concerning missing funds and fiscal mismanagement created a material and substantial disruption or an actual injury to their legitimate interests.

A related factor is the closeness of any working relationship. For example, in Brewster v. Board of Education, 149 F.3d 971 (9th Cir. 1998), the plaintiff conceded that, as a teacher, he had a close working relationship with the defendant principal that

United States District Court

For the Northern District of California

required frequent contact, trust and respect in order to be successful.  The court determined that this type of employment relationship requires "a wide degree of deference to the employer's judgment."  149 F.3d at 981 (quoting Connick, 461 U.S. at 151-52). But Plaintiff's employment relationship with the individual Defendants is not comparable to the relationship of an elementary school teacher and principal.

Another factor is the point of the speech and the value of the speech involved.  Courts consider whether the employee's speech was to bring wrongdoing to light and raise other issues, because they are of public concern, or whether the speech was to further some purely private interest.  Roth, 856 F.2d at 1406.  Here, Plaintiff's speech concerned more than just the sports programs that he oversaw; instead, it concerned the fiscal management of the athletic department as a whole.  Many of his complaints were made not as a coach, but as a community member.  For example, a March 10, 2003 letter from Plaintiff and others begins by stating that the senders are a group of community members concerned about the leadership of the athletics department at HSU and the pervasive pattern of fiscal mismanagement.

Defendants note that another factor considered is whether the allegations were ultimately determined to be false; the investigations that followed Plaintiff's complaints showed that Defendants did not engage in fraud and were not grossly negligent in maintaining the athletics department's finances.  But, as Plaintiff notes, following these investigations, Defendant Richmond relieved the athletics department of its responsibility over its

18

United States District Court

For the Northern District of California

finances.   More important, however, in weighing this factor is the fact that the investigations were completed after Plaintiff's contract was not renewed for the first time in over twenty years and after he was informed he would have to reapply for his position.   It is not clear whether these investigations were completed when Defendants passed over Plaintiff and hired a new coach.

Even giving full consideration to the government's interest in the effective and efficient fulfillment of its responsibilities to the public, as the Court must, Defendants are unable to show that the Pickering balancing test favors them, not Plaintiff.   See Connick, 461 U.S. at 150.

Nor are Defendants able to show, as a matter of law, that they would have failed to renew Plaintiff's contract, made him compete for a re-structured position and failed to rehire him as coach even in the absence of his complaints concerning fiscal mismanagement. As noted in Burch, the issue of whether defendants would have made the same decision absent the forbidden consideration generally presents a question of fact for the jury:  "Summary judgment might be warranted in cases where the plaintiff has conceded that he would have been terminated regardless, where the defendants can point to similarly situated individuals who were fired for comparable reasons, or where a more qualified applicant was hired in lieu of the plaintiff.  Presented with such facts, courts can say with confidence that defendants would have made the same decision."  Burch, 433 F. Supp. 2d at 1132.  But, here, as in Burch, the Court is not presented with such facts.

19

United States District Court

For the Northern District of California

In <u>Burch</u>, the plaintiff did not dispute that the defendants had discussions about not renewing his contract as the head wrestling coach months before they were aware of his Title IX activities.  Burch allegedly was confrontational, failed to follow policies and procedure and had philosophical differences with the administrators over how to achieve Title IX compliance.  <u>Id</u>. at 1131.  The court found, however, that the fact that defendants were contemplating not renewing the plaintiff's contract "does not show that they <u>would</u> have taken the same action in the absence of any protected activity."  <u>Id</u>. (emphasis in original).

Similarly, here, Defendants do not show that they would have taken the same action in the absence of Plaintiff's complaints about missing funds and fiscal mismanagement simply by providing evidence that they contemplated restructuring his position, not renewing his contract and conducting national searches before they knew of his complaints regarding missing funds and his filing of a whistleblower complaint.  Plaintiff provides evidence that Defendants did not always conduct national searches as Defendants contend is their practice.  Defendants also restructured the women's crew head coach position, did not renew the head coach's contract and planned to conduct a national search for a new head coach.  But, after the women's crew head coach complained, Defendants cancelled the national search because, according to Defendant Butler, she was a satisfactory employee.  She had not filed a whistleblower complaint.

In sum, there is a disputed question of fact as to the reasons for Plaintiff's termination.  Therefore, the Court denies summary

United States District Court

For the Northern District of California

judgment for the individual Defendants on Plaintiff's second section 1983 cause of action based on his speech concerning the missing funds and fiscal mismanagement.

C.   Defendant Richmond

Defendant Richmond is entitled to summary judgment in his favor.  A supervisor, such as Defendant Richmond, can be held liable under section 1983 only if he or she was personally involved in the constitutional deprivation or if there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991).  Plaintiff provides no evidence that Defendant Richmond, as HSU's president, was directly involved in the decision not to renew his contract or any other alleged retaliatory action, nor does he dispute Defendants' evidence that Defendant Richmond was not involved in any adverse employment action.  Plaintiff provides no evidence of a causal connection. Indeed, he fails to address Defendants' argument that, because Defendant Richmond was not directly involved in any decision affecting Plaintiff's employment, Defendant Richmond cannot be held liable under section 1983.  Therefore, the Court grants Defendant Richmond summary judgment on Plaintiff's second cause of action.

D.   Qualified Immunity

Defendants argue that they are entitled to summary judgment as to Plaintiff's section 1983 claims on the basis of qualified

immunity.[6]  The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The Supreme Court instructed in Saucier v. Katz, 533 U.S. 194 (2001), that when ruling on the qualified immunity issue, the court must decide (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right and (2) whether the right was clearly established.  533 U.S. at 201.  The Court also indicated that the "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id.  Thus, if the officer was not on notice that his conduct was clearly unlawful then that officer is protected from suit by qualified immunity.  See id.

As discussed above, Plaintiff's allegations that he suffered adverse employment actions based on his speech regarding fiscal mismanagement, if proven, would constitute a violation of his constitutional rights by Defendants.  And clearly established law forbids retaliation against public employees who have engaged in protected speech by reporting possible misuse of public funds.

---

[6]Defendants belatedly raise new arguments regarding qualified immunity, and other issues, in their reply.  As recognized in this district, "It is well settled that new arguments cannot be made for the first time in reply."  Contratto, 227 F.R.D. at 309.  Thus, the Court did not consider, and does not address, those arguments.

United States District Court

For the Northern District of California

<u>Coszalter</u>, 320 F.3d at 979 ("at the time defendants acted, both the constitutional protection of employee speech and a First Amendment cause of action for retaliation against protected speech were clearly established"); <u>Keyser</u>, 265 F.3d at 749.

Defendants' reliance on <u>Brewster</u> is unavailing.  As explained in <u>Keyser</u>, the Ninth Circuit in <u>Brewster</u> ruled that qualified immunity was warranted because the balance of free speech and workplace disruption in that case was both unprecedented and too close to say that a violation was clearly established.  265 F.3d at 749.  Unlike in <u>Keyser</u>, the government employer in <u>Brewster</u> pointed to testimony of other employees that Brewster's allegations of falsified records had caused disruption in the workplace.  <u>See id</u>.  Similarly, here, Defendants provide no evidence that Plaintiff's allegations of fiscal mismanagement caused disruption in the workplace; rather, as discussed above, Defendants point to Plaintiff's coworkers' complaints concerning Plaintiff that are unrelated to Plaintiff's protected speech at issue.  In addition, Brewster's allegations of falsified attendance records were ultimately determined to be untrue.  Here, it was not determined that Plaintiff's allegations were false, only that there was not "evidence of lying amounting to fraud or gross negligence." Richmond Dec., Ex. M.

Furthermore, as explained in <u>Keyser</u>, a person in Plaintiff's position is more likely than an average citizen to be informed about possible misuse of public funds, and thus his speech is entitled to greater protection under the First Amendment.  265 F.3d at 741.  No reasonable officer could have believed that he or she

United States District Court

For the Northern District of California

1  could terminate Plaintiff for reporting possible misuse of funds

2  and fiscal mismanagement.  See, e.g., id.; Roth, 865 F.2d at 1408;

3  Johnson, 48 F.3d at 427.  Therefore, Defendants are not entitled to

4  qualified immunity.

5  II.  Title IX Retaliation Claim

6       Plaintiff's fourth claim is that Defendant CSU retaliated

7  against him for reporting issues of Title IX non-compliance to his

8  superiors and to the Office of Civil Rights.  The Supreme Court has

9  recognized that an implied cause of action exists under Title IX

10  for retaliation based on an individual's complaints of sex

11  discrimination.  Jackson v. Birmingham Bd. of Educ., 544 U.S. 167

12  (2005).  But the Supreme Court did not provide guidance on how to

13  evaluate Title IX retaliation claims.  Courts have applied Title

14  VII case law to Title IX retaliation claims.  Burke, 433 F. Supp.

15  2d at 1125 (listing cases).  Therefore, to establish a prima facie

16  case of retaliation under Title IX, Plaintiff must show that (1) he

17  engaged in conduct protected by Title IX; (2) he was subjected to

18  adverse employment action; and (3) there was a causal link between

19  the protected conduct and the adverse employment decision.  Id.  As

20  discussed above, however, Plaintiff provides no evidence that

21  individual Defendants were aware of his Title IX conduct, nor does

22  he refute Defendants' evidence that they were unaware of his

23  conduct.  Plaintiff states that he reported his Title IX concerns

24  to the Dean of the College of Professional Studies and the former

25  athletics director, Mike Swan.  But it is undisputed that neither

26  Mr. Swain nor the Dean of the College of Professional Studies took

27  any adverse action against Plaintiff.  Therefore, Plaintiff cannot

28

establish the necessary causal link between his Title IX conduct and Defendants' adverse employment actions.  The Court grants summary judgment in favor of Defendant CSU on Plaintiff's Title IX retaliation claim.

III.  Whistleblower Claims

Plaintiff's sixth and seventh claims are only against Defendant CSU, not against the individual Defendants.  Plaintiff contends that Defendant CSU is liable for retaliating against him as a whistleblower.  Plaintiff's sixth claim is based on California Government Code sections 8547.12 and 12653; his seventh claim is based on California Labor Code section 1102.5.

A.  Section 8547.12

California's Whistleblower Act was enacted to provide specific remedies for State employees who report improper governmental activities.  Section 8547.12 of the Whistleblower Act pertains to Defendant CSU.  It provides, in part, that

> any action for damages shall not be available to the injured party unless the injured party has first filed a complaint with the university officer identified pursuant to subdivision (a), and the university has failed to reach a decision regarding that complaint within the time limits established for that purpose by the trustees.  Nothing in this section is intended to prohibit the injured party from seeking a remedy if the university has not satisfactorily addressed the complaint within 18 months.

Cal. Gov't Code § 8547.12(c).

Defendant CSU contends that Plaintiff's claim under section 8547.12 fails because it promptly had the Attorney General investigate Plaintiff's complaint that he was retaliated against for his whistleblowing activities and, based on that investigation, it promptly reached a decision that the individual Defendants had

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

not retaliated against Plaintiff.  It cites <u>Campbell v. Regents of University of California</u>, 35 Cal. 4th 311, 327 (2005), where the California Supreme Court noted that an employee may not proceed with a court action seeking damages against the university unless that institution has failed to reach an administrative decision on the action within specified time limits.  Defendant CSU acknowledges that section 8547.10 was at issue in <u>Campbell</u>, not section 8547.12, which is at issue here.  But Defendant CSU contends that subsection (c) in both sections are identical, save that one applies to the University of California system, while the other applies to the CSU system.

As Plaintiff points out, however, these two subsections are not identical.  Section 8547.10(c) does not contain the sentence, "Nothing in this section is intended to prohibit the injured party from seeking a remedy if the university has not satisfactorily addressed the complaint within 18 months."  In its reply, Defendant CSU acknowledges that no court has addressed the difference between sections 8547.10(c) and 8547.12(c) or the meaning of the term "satisfactorily addressed."  It urges the Court to interpret section 8547.12(c) as providing that Plaintiff is not entitled to a court remedy if it reaches an administrative decision within eighteen months of receiving Plaintiff's complaint.  Such an interpretation, however, would ignore the word "satisfactorily." <u>See</u> <u>Dyna-Med, Inc. v. FEHC</u>, 43 Cal.3d 1379, 1386-97 (1987) ("a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in

1  pursuance of the legislative purpose").

2       Nonetheless, the Court need not be the first to address the

3  differences, if any, between sections 8547.10(c) and 8547.12(c) or

4  to interpret "satisfactorily addressed."  Plaintiff provides no

5  evidence that his complaint was not satisfactorily addressed.

6  Plaintiff's disagreement with the results of the investigation is

7  not evidence that his complaint was not satisfactorily addressed.

8  Plaintiff does not deny that his complaint was promptly

9  investigated.  Nor does he contend that the investigative process

10 used by the deputy attorney general was unsatisfactory.  After

11 informing Plaintiff of the results of the deputy attorney general's

12 investigation, Defendant CSU further informed Plaintiff that he had

13 fourteen working days to submit a response.  He did not.

14      Because there is no dispute of material fact, regardless of

15 how section 8547.12(c) is construed, the Court grants Defendant CSU

16 summary judgment in its favor on Plaintiff's sixth claim to the

17 extent it is based on that section.

18      B.  Section 12653

19      Section 12653 is part of California's False Claims Act;

20 subsection (b) is the False Claims Act's "whistleblower" provision.

21 So. Cal. Rapid Transit Dist. v. Sup. Ct., 30 Cal. App. 4th 713, 724

22 (1994).  It provides, in relevant part, that an employer cannot

23 "discharge, demote, suspend, threaten, harass, deny promotion to,

24 or in any other manner discriminate against, an employee in the

25 terms and conditions of employment because of lawful acts done by

26 the employee on behalf of the employee or others in disclosing

27 information to a government or law enforcement agency or in

28                                    27

furthering a false claims action."  Cal. Gov't Code § 12653(b).

Plaintiff fails to provide any evidence that he suffered adverse employment action because of any disclosure of Title IX violations.  Therefore, he does not have evidence to support a cause of action based on any Title IX disclosure.

But Plaintiff does have evidence to support a cause of action based on his disclosure regarding HSU's athletic department's fiscal mismanagement.  Obviously, disclosure of fiscal mismanagement in a State school could prevent fraud on the public treasury.  Defendant CSU does not argue otherwise; instead, it argues that Plaintiff had no reasonable suspicion of a false claim and thus his cause of action fails as a matter of law.  See LeVine v. Weis, 90 Cal. App. 4th 201, 210 (2001) ("Plaintiff need not show that a false claim was actually made; he need only show that he had reasonably based suspicions of a false claim.").  Plaintiff provides evidence that he did have a reasonable suspicion that the athletics department was mismanaging funds.  Furthermore, although Dr. Kenyon's investigation did not find criminal conduct relating to the athletics department's fiscal management, he did find that fiscal management needed to improve.

The Court grants summary judgment in favor of Defendant CSU on Plaintiff's claim under section 12653 to the extent that it is based on his Title IX disclosures.  But, because there is a dispute of fact regarding Plaintiff's disclosures of fiscal mismanagement, the Court denies summary judgment on Plaintiff's section 12653 claim to the extent that it is based on his disclosures of HSU's athletics department's fiscal mismanagement.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

C.   Section 1102.5

California Labor Code section 1102.5 forbids an employer from taking retaliatory action against an employee for disclosing information to a governmental agency about the employer's violation of the law.   To establish a <u>prima facie</u> case under section 1102.5, Plaintiff must show (1) that he engaged in protected activity, (2) that he was thereafter subjected to an adverse employment action by his employer, and (3) that there was a causal link between the protected activity and the adverse employment action. <u>Love v. Motion Industries, Inc.</u>, 309 F. Supp. 2d 1128, 1134 (N.D. Cal. 2004).

As discussed above, Plaintiff does not show a causal link between his Title IX activity and any adverse employment action, but he does present evidence of a causal link between his complaints regarding fiscal mismanagement and the end of his employment.   Although Defendant CSU argues that only a formal complaint constitutes "protected activity," the cases it cites do not support that argument.   Furthermore, it is undisputed that Plaintiff filed a formal complaint regarding the athletics department's fiscal mismanagement.

The Court grants summary judgment in favor of Defendant CSU on Plaintiff's claim under section 1102.5 to the extent that it is based on his Title IX activity, but denies summary judgment on this claim to the extent it is based on his disclosures regarding the athletics department's fiscal mismanagement.

IV.   Intentional Infliction of Emotion Distress Claim

Plaintiff's eighth claim is against the individual Defendants

**United States District Court**
For the Northern District of California

for intentional infliction of emotional distress.  Defendants contend that, as a matter of law, this claim fails because they did not engage in any extreme or outrageous conduct and because Plaintiff's claim is barred by discretionary immunity.  Plaintiff does not disagree; he states that he does not oppose Defendants' motion with respect to his claim of intentional infliction of emotion distress.  Summary judgment for Defendants is granted on this claim.

V.   Punitive Damages

Plaintiff requests punitive damages against the individual Defendants.  Defendants contend that the Court should dismiss Plaintiff's punitive damage requests, arguing that he has failed to provide any evidence that the individual Defendants acted with malice or evil motive to stifle Plaintiff's speech or activities. As Defendants note in their reply, Plaintiff did not address this argument in his opposition.  Summary judgment for Defendants is granted on Plaintiff's request for punitive damages.

CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment (Docket No. 40) IN PART and DENIES IT IN PART. Specifically, the Court GRANTS summary judgment in favor of the individual Defendants on Plaintiff's first section 1983 claim based on his Title IX speech and GRANTS summary judgment in favor of Defendant Richmond on Plaintiff's second section 1983 claim based on his speech regarding fiscal mismanagement.  But the Court DENIES summary judgment in favor of Defendants Collen and Butler on Plaintiff's second section 1983 claim and finds that these

Defendants are not entitled to qualified immunity.  Regarding

Plaintiff's sixth claim against Defendant CSU, the Court GRANTS

summary judgment in favor of Defendant CSU to the extent that the

claim is based on section 8547.12(c); the Court GRANTS summary

judgment in favor of Defendant CSU to the extent the claim is based

on section 12653 and Plaintiff's Title IX disclosures, but DENIES

summary judgment on the claim to extent it is based on section

12653 and Plaintiff's disclosures regarding HSU's athletics

department's fiscal mismanagement.  Regarding Plaintiff's seventh

claim against Defendant CSU, the Court GRANTS summary judgment in

favor of Defendant CSU to the extent that the claim is based on

Plaintiff's Title IX disclosures, but DENIES summary judgment to

the extent that the claim is based on Plaintiff's disclosures

regarding HSU's athletics department's fiscal mismanagement.

Summary judgment for the individual Defendants is GRANTED on

Plaintiff's eighth claim for intentional infliction of emotional

distress and Plaintiff's request for punitive damages.

    IT IS SO ORDERED.


Dated: 9/7/06

_____
CLAUDIA WILKEN
United States District Judge